IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:25-CV-1045-M-KS

| | | |
|---|---|---|
| ERIK ORTH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM & RECOMMENDATION** |
| | ) | |
| FRANK BISIGNANO, Commissioner of Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court for judicial review pursuant to 42 U.S.C. § 405(g) of a final administrative decision of the Social Security Administration denying Plaintiff's application for a period of disability and disability insurance benefits ("DIB"). The parties have fully briefed the matter pursuant to the Supplemental Rules for Social Security Actions,[1] and this matter is ripe for decision. Having carefully reviewed the administrative record and the parties' briefs, the undersigned recommends that the case be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

## STATEMENT OF THE CASE

Plaintiff applied for DIB on January 12, 2024, with an alleged onset date of October 20, 2018. (R. 18, 191–92.) The application was denied initially and upon

[1] Plaintiff filed a motion for judgment on the pleadings and supporting memorandum on November 26, 2025 [DE #17]. The court construes these as Plaintiff's opening brief under the Supplemental Rules for Social Security Actions.

reconsideration, and a request for hearing was filed. (R. 18, 65, 78, 105–06.) A telephonic hearing was held on February 21, 2025, before Administrative Law Judge ("ALJ") J. Dennis Reap, who issued an unfavorable ruling on March 28, 2025. (R. 18–64.) On April 23, 2025, the Appeals Council denied Plaintiff's request for review. (R. 1–7.) At that time, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. On May 30, 2025, Plaintiff filed the instant civil action, seeking judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

### I. Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (citations omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro*

*v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## II. Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520(a)(4); *Albright v. Comm'r of SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id.* In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's residual functional capacity] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). "If the

Commissioner meets [this] burden, the ALJ finds the claimant not disabled and denies the application for benefits." *Mascio v. Colvin*, 780 F.3d 632, 635 (4th Cir. 2015).

## III. ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act ("the Act"). As a preliminary matter, the ALJ found Plaintiff met the insured status requirements of the Act through December 31, 2025. (R. 20.) At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since March 1, 2020. (*Id.*) Next, the ALJ determined Plaintiff has severe impairments of degenerative disc disease, obesity, depressive disorder, and anxiety disorder. (*Id.*)

At step three, the ALJ concluded Plaintiff's impairments are not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. (R. 21.) The ALJ expressly considered Listings 1.15, 1.16, 12.04, and 12.06. (*Id.*)

Before proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found that Plaintiff has

> the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except avoid climbing ramps and stairs, avoid hazards such as unprotected heights and dangerous machinery, avoid ladders, ropes and scaffolds, avoid vibrations with the extremities, can understand, carry out and remember simple work tasks with customary breaks, can occasionally interact with coworkers and supervisors but should avoid public interaction and work with things instead of people, can adapt to occasional changes in work routines.

(R. 22.) In making this assessment, the ALJ stated that he considered Plaintiff's symptoms and the evidence (both "objective medical" and "other") based on the requirements of 20 C.F.R. § 404.1529 and SSR 16–3p, 2017 WL 5180304 (Oct. 25, 2017), and found Plaintiff's statements concerning the intensity, persistence, and limiting effects of Plaintiff's symptoms "not entirely consistent with the medical evidence and other evidence in the record." (R. 22–23.) At step four, the ALJ concluded that Plaintiff has no past relevant work. (R. 26.) At step five, the ALJ determined, based upon Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, namely: mail clerk (DOT #209.687-026), bottling line attendant (DOT #920.687-042), and router (DOT #222.587-038). (R. 27.) The ALJ concluded that Plaintiff has not been disabled under the Act since October 20, 2018, through the date of the decision. (R. 28.)

## IV. Plaintiff's Arguments

Plaintiff contends the Commissioner erred by

(A) failing to explain how Plaintiff's moderate limitations in adapting and managing himself impacted the RFC (Pl.'s Br. [DE #17] at 2–6);

(B) failing to explain how Plaintiff's moderate limitations in maintaining concentration, persistence, and pace impacted the RFC (*id.* at 7–12); and

(C) improperly rejecting a medical opinion (*id.* at 12–13).

For the reasons explained below, the court agrees with Plaintiff as to the second argument and therefore recommends remand to the Commissioner for further proceedings.

## A. RFC

Plaintiff argues the ALJ failed to explain how the RFC accounted for the following limitations: (1) Plaintiff's moderate limitation in adapting or managing himself; and (2) Plaintiff's moderate limitation in maintaining concentration, persistence, and pace. (Pl.'s Br. at 2–12.) The Commissioner contends the ALJ built a logical bridge from these limitations to the RFC assessment. (Comm'r's Br. [DE #19] at 6.) The undersigned agrees that the ALJ explained how the moderate limitation in Plaintiff's ability to adapt or manage himself impacted the RFC. However, the undersigned determines the ALJ did not explain how the moderate limitation in concentration, persistence, and pace impacted (or did not impact) the RFC.

The RFC is an administrative assessment of "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis" despite impairments and related symptoms. SSR 96–8p, 1996 WL 374184, at *1; *see also* 20 C.F.R. § 404.1545(a)(1). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96–8p, 1996 WL 374184, at *1. In assessing an individual's RFC, the ALJ considers an individual's ability to meet the physical, mental, sensory, and other requirements of work. 20 C.F.R. § 404.1545(a)(4). The RFC assessment must be based upon all relevant evidence, which may include the claimant's own description of limitations from alleged symptoms. SSR 96–8p, 1996 WL 374184, at *5; 20 C.F.R. § 404.1545(a)(3). In fulfilling the obligation to consider all relevant evidence, an ALJ "cannot simply cherrypick facts that support a finding of nondisability while ignoring

evidence that points to a disability finding." *Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017). Rather, the ALJ must "explain how any material inconsistences or ambiguities in the evidence were considered and resolved." SSR 96–8p, 1996 WL 374184, at *7.

An ALJ must also "include a narrative discussion describing how the evidence supports each conclusion" in the RFC. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Mascio*, 780 F.3d at 636). The ALJ must specifically explain how certain pieces of evidence support particular conclusions and "discuss[ ] . . . which evidence the ALJ found credible and why." *Monroe*, 826 F.3d at 189 (quoting *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)). The Fourth Circuit has interpreted this to require an ALJ to "build an accurate and logical bridge from the evidence to his conclusion." *Monroe*, 826 F.3d at 189 (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)); *see also Arakas v. Comm'r of SSA*, 983 F.3d 83, 95 (4th Cir. 2020). ALJs must explain their RFC findings regarding contested functional abilities when conducting the required function-by-function analysis. *See Dowling v. Comm'r of SSA*, 986 F.3d 377, 388–89 (4th Cir. 2021).

"[A] proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion . . . . [M]eaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (citing *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018)). Simply put, this means an ALJ must "[s]how his work." *Patterson v. Comm'r of SSA*, 846 F.3d 656, 663 (4th Cir. 2017) (applying same principle to an ALJ's listing

analysis). Such analysis—"[h]armonizing conflicting evidence and bolstering inconclusive findings," *Patterson*, 846 F.3d at 662—is a "necessary predicate" to determining whether substantial evidence supports the Commissioner's findings, *Monroe*, 826 F.3d at 189 (quoting *Radford*, 734 F.3d at 295). Where a court is "left to guess about how the ALJ arrived at his conclusions on [a claimant's] ability to perform relevant functions . . . , remand is necessary." *Mascio*, 780 F.3d at 637.

During the listings analysis at step three, ALJ Reap found Plaintiff moderately limited in adapting or managing himself and in maintaining concentration, persistence, and pace. (R. 21–22.) *See also* 20 C.F.R. Part 404, Subpart P, App. 1, § 12.00E.4 (describing the ability to adapt or manage oneself as referring to a person's "abilities to regulate emotions, control behavior, and maintain well-being in a work setting" and noting that the examples provided "illustrate the nature of this area of mental functioning"), § 12.00E.3 (describing the ability to concentrate, persist, or maintain pace as referring to a person's "abilities to focus attention on work activities and stay on task at a sustained rate").

Here, the ALJ explained how the step-three finding that Plaintiff has moderate limitations in adapting or managing himself translated into an RFC limitation. In the RFC, the ALJ found Plaintiff "can occasionally interact with coworkers and supervisors but should avoid public interaction and work with things instead of people, can adapt to occasional changes in work routines." (R. 22.) The ALJ explained:

> With respect to [Plaintiff's] mental impairments, the undersigned finds that [Plaintiff] is able to understand, carry out and remember simple work tasks with customary breaks, can occasionally interact with coworkers and supervisors but should avoid public interaction and work

> with things instead of people, and can adapt to occasional changes in work routines. [Plaintiff] testified to significant anxiety but yet in his therapy notes, he often reported that he was doing well and had responded well to the medication.

(R. 24.) The ALJ's evaluation of Plaintiff's limitations is supported by substantial evidence, including Plaintiff's symptom improvement with medication and Plaintiff's self-assessment. (R. 435, 438–39, 452, 454, 472–73.) As such, the ALJ considered Plaintiff's moderate limitations in the ability to adapt and manage himself and how those limitations impact Plaintiff's ability to work. *See Nelson v. Saul*, No. 4:18-CV-163-D, 2019 WL 4748028, at *6 (E.D.N.C. Aug. 29, 2019) (workplace changes and social interaction limitations may adequately account for a claimant's moderate limitation in adapting or managing oneself), *M. & R. adopted*, 2019 WL 4747048 (E.D.N.C. Sept. 27, 2019). The RFC assessment properly accounted for Plaintiff's mental limitations regarding his ability to adapt or manage himself and this argument should therefore be rejected.

In contrast to the ALJ's explanation for the moderate limitation in Plaintiff's ability to adapt and manage himself, the ALJ failed to explain how Plaintiff's moderate limitation in concentration, persistence, and pace impacted the RFC. When an ALJ finds a moderate limitation in concentration, persistence, or pace at step three, the ALJ must explain how that limitation either impacts or does not impact the RFC. *Mascio*, 780 F.3d at 638. An RFC restriction to simple, routine tasks or unskilled work, absent further explanation, does not account for a moderate limitation in concentration, persistence, and pace. *See id.* While there may be times when a "moderate limitation in concentration, persistence, or pace at step three does

not translate into a limitation in . . . residual functional capacity," the ALJ must explain why this is so. *Id.*

The ALJ found Plaintiff "can understand, carry out and remember simple work tasks with customary breaks." (R. 22.) However, the ALJ failed to explain how the moderate limitation in concentration, persistence, or pace impacted the RFC. It is not enough for the ALJ to restrict Plaintiff to simple tasks because "the ability to perform simple tasks differs from the ability to stay on task." *Mascio*, 780 F.3d at 638. Absent an explanation from the ALJ, the undersigned is left to guess how the ALJ accounted for this limitation. *Id.* Accordingly, the matter should be remanded to the Commissioner. *Id.*

**B. Medical Opinion**

Plaintiff argues the ALJ improperly evaluated and rejected the medical opinion of Dr. Joseph M. Laureti, D.O., as the ALJ's assessment of this medical opinion was "based on a complete misunderstanding about the medical treatment time periods" contained in the record. (Pl.'s Br. at 12–13.) The Commissioner says the rejection of the medical opinion was not due to a misunderstanding—that the ALJ "found [the opinion] not persuasive for legitimate, articulated reasons." (Comm'r's Br. at 16.)

When evaluating medical opinions, the ALJ must consider factors set forth in 20 C.F.R. § 404.1520c(b), (c)(1)–(5). *See generally Oakes v. Kijakazi*, 70 F.4th 207, 212 (4th Cir. 2023) (summarizing the medical opinion evaluation process for disability claims filed after March 27, 2017). "The ALJ is not required to explain how

[he] considered each of the relevant factors; instead, when articulating [his] finding about whether an opinion is persuasive, the ALJ need only explain how [he] considered 'the most important factors' of supportability and consistency." *Corbin v. Kijakazi*, No. 2:20-CV-60-M, 2022 WL 990487, at *2 (E.D.N.C. Mar. 31, 2022). "Supportability is the degree to which a provider supports their opinion with relevant, objective medical evidence and explanation, and consistency is the degree to which a provider's opinion is consistent with the evidence of other medical and non-medical sources in the record." *Oakes*, 70 F.4th at 212. Generally, the ALJ must explain how the evidence led to his conclusions. *Arakas*, 983 F.3d at 95 ("To pass muster, ALJs must 'build an accurate and logical bridge' from the evidence to their conclusions." (quoting *Monroe*, 826 F.3d at 189)); *Mascio*, 780 F.3d at 637.

After reviewing Plaintiff's records, Dr. Laureti opined that Plaintiff would have significant limitations with standing, walking, mobility, and environmental hazards. (*See* R. 624–29.) Dr. Laureti indicated Plaintiff could only stand and walk for fifteen minutes at a time and only a total of one hour in an eight-hour workday. (R. 625.) He also noted restrictions on lifting, use of upper extremities, use of foot controls, and exposure to environmental conditions. (R. 626–29.)

The ALJ found Dr. Laureti's opinion not fully persuasive because he found the medical evidence did not support several of the limitations imposed by Dr. Laureti. (R. 25.) In evaluating Dr. Laureti's opinion, the ALJ incorrectly stated that portions of the record relied upon by Dr. Laureti were from a time-period when Plaintiff was working at substantial gainful levels. (*See* R. 20 (finding Plaintiff had not been

engaged in substantial gainful work activity since March 2020)). In light of the other issue requiring remand, the undersigned does not address whether the ALJ's misstatements in this regard constitute reversible error. Instead, it is recommended that the ALJ have the opportunity to address the relevant medical opinions on remand.

## CONCLUSION

For the foregoing reasons, it is RECOMMENDED that the case be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **August 7, 2026**, to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See* 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. (May 2023).

A party that does not file written objections to the Memorandum and Recommendation by the foregoing deadline, will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the

Memorandum and Recommendation without such review. In addition, a party's failure to file written objections by the foregoing deadline may bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846–47 (4th Cir. 1985).

This 23rd day of July 2026.

KIMBERLY A. SWANK
United States Magistrate Judge